UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-616-FDW

| CHRISTOPHER D. ELLERBE, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| vs. | ) | ORDER |
| ERIK A. HOOKS, | ) |  |
| Respondent. | ) |  |

**THIS MATTER** is before the Court upon Christopher D. Ellerbe's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 13.) Also before the Court is Petitioner's "Motion for Judge's Order to Petitioner's Amended Petition of § 2254 Writ of Habeas Corpus." (Doc. No. 15.)

### I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina who was indicted on May 8, 2006, by a Mecklenburg County grand jury on two counts of attempted first-degree murder, two counts of assault with a firearm on a law enforcement officer, one count of assault with a deadly weapon with intent to kill inflicting serious bodily injury, one count of assault with a deadly weapon with intent to kill, and one count of possession of a firearm by a felon. State v. Ellerbe, 691 S.E.2d 767, 2010 WL 697334, at *2 (N.C. Ct. App. 2010) (unpublished). Following a motion by Petitioner, the trial court discharged appointed counsel and allowed Petitioner to represent himself at trial. Id.

The North Carolina Court of Appeals summarized the evidence presented at trial, as follows:

1

> [O]n the morning of 5 April 2006, law enforcement officials in South Carolina contacted the Charlotte-Mecklenburg Police Department [CMPD] requesting assistance to execute an arrest warrant against Defendant, Christopher Dennie Ellerbe. Law enforcement officials in Sumter believed that Defendant could be located at the home of his brother, Ricky Ellerbe, in Charlotte, North Carolina. Officers with the Violent Criminal Apprehension Team and the United States Marshall's office proceeded to Ricky Ellerbe's residence to locate the Defendant.
>
> While conducting surveillance of Ricky Ellerbe's residence, officers observed Ricky Ellerbe and his sister, Veronica Nelson, emerge from the home. Officers made contact with Ricky Ellerbe and Veronica Nelson, informing the pair of Defendant's warrant. After a brief conversation, Ricky Ellerbe confirmed that Defendant was inside the residence, denied that any weapons were present, and reluctantly allowed officers to enter his home.
>
> After several unsuccessful attempts to gain entry, Ricky Ellerbe directed officers to an entrance located at the rear of the home. Several officers positioned themselves at the rear entry of the home and prepared to enter. Meanwhile [CMPD] Officer [Kayvan] Hazrati positioned himself in a garage connected to the residence to limit the possibility of Defendant's escape.
>
> Using a set of keys provided by Ricky Ellerbe, the officers located at the rear entrance of the home entered. When officers called out to the Defendant, Defendant fired shots upon the officers. The officers retreated from the rear entrance and took cover at the back of the residence. Hearing the gunshots from the garage, Officer Hazrati attempted to kick down the door. After several kicks, Officer Hazrati's foot went through the door. When bending down to push the door open with his shoulder, Officer Hazrati was shot in the head by Defendant. Hearing the gunshots, several officers returned to the garage, removed the unconscious and bleeding Officer Hazrati, and transported him to the hospital.
>
> Following the shooting of Officer Hazrati, members of the SWAT Team and a crisis negotiator arrived at the location. After approximately six hours of negotiation, police officers released tear gas into the residence and Defendant agreed to exit the home. However, ignoring commands from several officers, Defendant charged out of the house firing his gun. Officers shot Defendant as he ran toward them. However, before he was shot, Defendant fired a shot striking a second [CMPD] officer [William L. Parks]. The bullet fired from Defendant's gun was deflected by the officer's helmet and caused no serious injury.

Id. at *1. The jury found Petitioner guilty of all the charges for which he was indicted; the same jury subsequently determined that the State had proven a number of aggravating factors beyond a reasonable doubt. Id. at *2. Petitioner received sentences in the aggravated range for some or all

2

of his convictions.  Id. at *3.  Judgment was entered on March 4, 2008.  Id. at *1.

On March 2, 2010, the North Carolina Court of Appeals issued an opinion on direct appeal, finding no error in the judgment.  Ellerbe, 2010 WL 697334 at *3.  On June 6, 2011, Petitioner filed a petition in the North Carolina Supreme Court for a writ of certiorari to review the decision of the Court of Appeals.  State v. Ellerbe, No. 220P11, 717 S.E.2d 385 (N.C. 2011) (unpublished).  The petition was dismissed on August 25, 2011.  Id.

"Thereafter [Petitioner] filed assorted pro se motions" in the Mecklenburg County Superior Court.  (Order re: Mot. to Dismiss, § 2254 Pet. Ex. F, Doc. No. 1-2 at 22 ¶ 5.)  At some point, he filed a paper writing titled: "AFFIDAVIT IN THE NATURE OF WRIT OF HABEAS CORPUS & A DEMAND FOR DISMISSAL OR STATE THE PROPER JURISDICTION," which the Mecklenburg Superior Court construed as a Motion for Appropriate Relief ("MAR") and denied on August 22, 2014.  (Order re: Mot. to Dismiss 22-23 ¶¶ 6-7.)

Petitioner next filed a "Motion to Dismiss" in the trial court on September 15, 2015, which the court also construed as an MAR.  (Order re: Mot. to Dismiss 23 ¶ 8.)  The court entered an order filed on October 13, 2015, finding the claims raised in the MAR were procedurally barred (Order re: Mot. to Dismiss 23 ¶¶ 10-12) and that the MAR was "without merit" (Order re: Mot. to Dismiss 23).  Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals, which was denied on December 18, 2015 (Order Den. Cert. Pet., § 2254 Pet. Ex. D, Doc. No. 1-2 at 20), and a petition for discretionary review ("PDR") in the North Carolina Supreme Court that was dismissed on March 17, 2016 (Order Dismiss PDR, § 2254 Pet. Ex. C, Doc. No. 1-2 at 18).

Petitioner filed a paper document titled "Petition for Writ of Certiorari" on July 11, 2016, in the United States District Court for the Eastern District of North Carolina, claiming his

indictments for attempted first-degree murder were invalid. (§ 2254 Pet. 2-5, Doc. No. 1.) That court construed the pleading as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and transferred it to this Court where venue is proper. (Doc. No. 6.)

Because Petitioner had not previously challenged his state judgments in federal court, this Court provided him notice of its intent to recharacterize the "Petition for Writ of Certiorari" as an initial § 2254 habeas petition and an opportunity to respond, see United States v. Emmanuel, 288 F.3d 644, 649 (4th Cir. 2002), overruled in part on other grounds by Castro v. United States, 540 U.S. 375, 383 (2003), as recognized in United States v. Blackstock, 513 F.3d 128, 133 (4th Cir. 2008). (Doc. No. 9.) In its Order, the Court cited the statute of limitations imposed on § 2254 petitions by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1), and observed that Petitioner's § 2254 habeas petition appeared to be untimely under § 2244(d)(1)(A). (Order 2-3, Doc. No. 9.) The Court also notified Petitioner that it would provide him an opportunity to amend the Petition to the extent permitted by law and to respond in the event the claims raised in the Petition and/or any amendment thereto appeared to be untimely. (Order 3.)

Petitioner filed a response agreeing to the Court's characterization of his pleading as a § 2254 petition. (Doc. No. 10.) He also filed the instant Amended § 2254 Petition, claiming that law enforcement officers did not have probable cause to search his brother's residence in Charlotte because South Carolina never issued a warrant for his arrest; that the trial court violated North Carolina law when it allowed him to represent himself; that counsel rendered ineffective assistance on appeal by failing to raise certain issues, and that attempted first-degree murder is not a crime under North Carolina law. (Am. § 2254 Pet., Doc. No. 12.)

II. **STANDARD OF REVIEW**

The Court is guided by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, which directs district courts to dismiss habeas petitions when it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief. Rule 4, 28 U.S.C.A. foll. § 2254. In conducting its review under Rule 4, the court "has the power to raise affirmative defenses sua sponte," including a statute of limitations defense under 28 U.S.C. § 2244(d). Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002). The court may dismiss a petition as untimely under Rule 4, however, only if it is clear that the petition is untimely, and the petitioner had notice of the statute of limitations and addressed the issue. Id. at 706–707.

### III. DISCUSSION

As noted, AEDPA provides a statute of limitation for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). Generally, the petition must be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1] § 2244(d)(1)(D). The limitations period is tolled during the pendency of a properly filed state post-conviction action. 28 U.S.C. § 2244(d)(2).

Judgment was entered in this case on March 4, 2008. The North Carolina Court of Appeals issued its Order denying Petitioner's direct appeal on March 2, 2010. Petitioner then had thirty-five (35) days to seek discretionary review in the North Carolina Supreme Court. See N.C. R. App. P. 15(b) ("A petition for review following determination by the Court of Appeals shall be . . . filed and served within fifteen days after the mandate of the Court of Appeals has

---

[1] There are three alternate start dates for the statute of limitations. See § 2244(d)(1)(B)-(D). However, Petitioner does not allege any facts to support a finding of one or more of the alternate start dates apply here.

been issued to the trial tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk."). Because he did not seek discretionary review during the thirty-five-days allowed by the North Carolina Rules of Appellate Procedure, Petitioner's conviction became final on or about April 6, 2010, when the time for seeking discretionary review expired. See § 2244(d)(1)(A); Gonzalez v. Thaler, 132 S. Ct. 641, 656 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires.").

The statute of limitations then ran for 365 days until it fully expired on or about April 6, 2011, more than five years before Petitioner filed his original § 2254 habeas Petition.[2] None of Petitioner's filings in the state courts after that date resurrected or restarted the federal statute of limitations. See Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000) (recognizing that state applications for collateral review cannot revive an already expired federal limitations period). Consequently, absent equitable tolling, the § 2254 Petition is untimely under § 2244(d)(1)(A).[3]

Equitable tolling of a habeas petition is available only when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Under Fourth Circuit precedent, equitable tolling is appropriate in those "rare instances where—due to circumstances external to the party's own

---

[2] Prior to drafting this Order, the Court again reviewed all of the exhibits attached to Petitioner's original habeas petition. In so doing, the Court discovered that the timeline it cited in a previous Order (Doc. No. 11) was incorrect. Regardless, Petitioner's original and amended § 2254 Petitions are untimely under either timeline.

[3] Petitioner makes a fleeting reference to "new evidence" as a reason to toll the statute of limitations (Am. § 2254 Pet. 1), see § 2244(d)(1)(D), but he never identifies what that evidence is or to which of his claims it relates.

6

conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotation marks omitted). Petitioner contends that equitable tolling should apply because he did not have access to a law library or to someone trained in the law to assist him in pursuing his legal claims. (Am. § 2254 Pet. 1-2.)

"[E]ven in the case of an unrepresented prisoner," however, "ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (citing Cross-Bey v. Gammon, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."); United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling . . . ."); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a pro se prisoner's ignorance of the law warranted equitable tolling); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (same)). Additionally, even accounting for the absence of a law library and other legal resources, Petitioner has not demonstrated that he acted with reasonable diligence in asserting his rights. In other words, Petitioner has not shown a causal connection between the absence of legal resources and the delay in his ability to file his habeas petition. See Valverde v. Stinson, 224 F.3d 129, 134 (2nd Cir. 2000) (Whether a petitioner's exigent extraordinary circumstances prevented his timely filing depends on if the petitioner can "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of the filing.").

Petitioner did not take any action in the state courts for more than a year after the North

7

Carolina Court of Appeals denied his direct appeal. After that, he filed what the trial court described as "assorted pro se motions asserting various nonsensical legal theories"[4] (Order re: Mot. to Dismiss 22 ¶ 5), before finally filing a paper writing, probably sometime in 2014, that the trial court, *in its discretion*, construed as an MAR (Order re: Mot. to Dismiss 22-23 ¶¶ 6-7). Petitioner, again, did not act for more than a year after that motion was denied, and it was almost another year after that before he filed his original § 2254 Petition. Other exhibits filed by Petitioner indicate he did not begin gathering certain documents to support an MAR until 2012, after the statute of limitations had run its course. (Pet'r's Mar. 19, 2012 Letter to Sumter Co. Sheriff's Office, Am. § 2254 Pet. Ex. D, Doc. No. 13-3; Pet'r's Apr. 16, 2012 Letter to Sumter Co. Sheriff's Office, Am. § 2254 Pet. Ex. C, Doc. No. 13 at 10-11.) In short, Petitioner has failed to show that it was the lack of access to legal resources that prevented him from filing a timely habeas petition.

IV. **CONCLUSION**

The Petition for Writ of Habeas Corpus is untimely under § 2244(d)(1)(A), and Petitioner is not entitled to equitable tolling of the statute of limitations. Accordingly, the Amended § 2254 Petition shall be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. The Amended 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Doc. No. 13) is **DISMISSED** as untimely under 28 U.S.C. § 2244(d)(1)(A);

2. Petitioner's "Motion for Judge's Order to Petitioner's Amended Petition of § 2254

---

[4] The trial court cited as an example, a motion by petitioner arguing that since he was African-American, under Dred Scott v. Sanford, 60 U.S. (19 Howard) 393 (1857), he was not a citizen of the United States and therefore outside the jurisdictional reach of the United States. (Order re: Mot. to Dismiss 22 ¶ 5 n.1.)

Writ of Habeas Corpus" (Doc. No. 15) is **DISMISSED** as moot; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: January 2, 2018

*[signature]*

Frank D. Whitney
Chief United States District Judge